UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UBER TECHNOLOGIES, INC.,

                    Petitioner,

       -against-

ARTHUR BLOSSOMGAME,

                  Respondent.

                              **CASE NO. 2:20-CV-4842-SJF**

**PETITIONER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PETITION TO COMPEL ARBITRATION AND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Petitioner Uber Technologies, Inc. ("Uber" or the "Company") submits this reply memorandum of law in further support of its petition to compel arbitration and motion for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

Blossomgame does not challenge the existence of either the Uber USA TSA (the "2015 Agreement") or the Rasier-NY TSA (the "2017 Agreement"); he does not argue that his claims fall outside of the scope of the Arbitration Provision; and he does not claim that he never assented to the 2015 or 2017 Agreements.[1]  Instead, he argues that he opted out of the 2015 Agreement's arbitration provision, and that his purported 2015 opt-out letter (the "2015 Letter") applied prospectively to the 2017 Agreement's Arbitration Provision as well.  His argument fails.

Blossomgame's challenge to the enforceability of the Arbitration Provision is a question that the parties agreed to delegate to the arbitrator.  Even if the parties had not agreed to this delegation, the Court should find that there is no merit to the opt-out argument, or to any other argument proffered by Blossomgame in his opposition.  First, Blossomgame's declaration, which attaches the purported opt-out letter from 2015, does not comply with 28 U.S.C. § 1746.  Second, the language in the 2015 letter that purports to opt out of the subsequent 2017 Agreement is of no legal effect. Third, his testimony regarding the 2015 letter is undermined by his counsel's recent representation that Blossomgame was not even familiar with either the 2015 Agreement or the 2017 Agreement, let alone that he had affirmatively opted out of the former.  Fourth, the 2015 Letter is defective on its face under the Agreements.  Finally, contrary to Blossomgame's suggestion, the Court would not need to enjoin the NYSDHR in order to compel arbitration of Blossomgame's claims.

---

[1] All capitalized terms have the meaning prescribed for them in Petitioner's opening memorandum of law (ECF No. 7-1).

For the reasons set forth below, and in the opening memorandum of law in support, Petitioner respectfully requests that the Court grant the relief requested.

## ARGUMENT

### I.    The Question of Enforceability of the Arbitration Provision Has Been Delegated to the Arbitrator

Even if the Court were to credit Blossomgame's factual assertions – and, for the reasons set forth in Section II of this reply memorandum, it should not – the question of whether the Arbitration Provision is enforceable has been delegated to the arbitrator.  As an initial matter, Blossomgame does not appear to dispute that he assented to either the 2015 or 2017 Agreements. He asserts only that he opted out of the arbitration provision in the 2015 Agreement and that his purported opt-out letter from 2015 also applied to the future 2017 Agreement as well.

As explained in Section II.B.1 of Petitioner's opening memorandum of law, the Arbitration Provision contains a delegation clause that states:  "disputes arising out of or relating to interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." Ex. B § 15.3(i).  Therefore, to the extent that Blossomgame has created a dispute as to the effect of his 2015 Letter on the enforceability of the Arbitration Provision, that dispute must be resolved in arbitration.

The court in *Mumin v. Uber Technologies, Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017) (Garaufis, J.) faced a similar scenario to that presented here.  In *Mumin*, one of the plaintiffs alleged that he had opted out of the arbitration provision in a previous iteration of his agreement with Uber, and that that earlier opt-out also applied to a subsequent [] agreement.  The Court held that the plaintiff's "arguments that he expressed his intent to opt out of a prior arbitral clause before agreeing to the [subsequent] Agreement is irrelevant" to whether arbitration should be compelled

because the plaintiff "intended to delegate questions of arbitrability to an arbitrator, and therefore any challenge to the scope, enforceability, or applicability of the Arbitration Provision is for an arbitrator to resolve in the first instance." *Id.* at 524-25. Here, too, even if the Court were to credit Blossomgame's assertion that he sent the 2015 Letter, it would at most create a question for the arbitrator to decide, not the Court.

To clarify, the issue of enforceability does not go to the threshold question of whether Blossomgame assented to the 2015 and 2017 Agreements in the first place. Petitioner has provided ample evidence that Blossomgame accepted both Agreements, and he has proffered no evidence or argument in rebuttal. A valid agreement to arbitrate exists. Therefore, the question to be delegated to an arbitrator is whether the 2015 Letter that Blossomgame purportedly sent after his acceptance of the 2015 Agreement renders the Arbitration Provisions in either the 2015 or 2017 Agreements unenforceable. The parties agreed to resolve such questions in arbitration.

## II. Blossomgame Is Bound by the 2017 Agreement

As noted above, the question of the effectiveness of Blossomgame's 2015 Letter has been delegated to an arbitrator to resolve. However, even if the Court were to address this argument, it fails for a number of reasons.

### A. Blossomgame's declaration and its attachment are invalid and should be disregarded by the Court.

The unsworn declaration to which Blossomgame attaches his purported December 15, 2015 opt-out letter does not comply with 28 U.S.C. § 1746(2), which requires that the declarant include the following subscription: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." Therefore, the Court may not consider Blossomgame's declaration or its attachment in its ruling. *See Estate of Keenan v. Hoffman-Rosenfeld*, No. 16CV0149SFJAYS, 2019 WL 3410006, at *17 n.13 (E.D.N.Y. July 29, 2019) (Feuerstein, J.)

(rejecting declaration that was not sworn under penalty of perjury); *Condoleo v. Guangzhou Jindo Container Co.*, 427 F. Supp. 3d 316, 322 (E.D.N.Y. 2019) (Feuerstein, J.) (ruling that report was inadmissible hearsay because it was attached to a defective declaration); *Team Kasa, LLC v. Humphrey*, No. CV171074JSAKT, 2018 WL 1867117, at *4 (E.D.N.Y. Jan. 24, 2018) ("Moreover, the phrase 'duly sworn' does not satisfy Section 1746."), *report and recommendation adopted*, 2018 WL 1083958 (E.D.N.Y. Feb. 26, 2018).

**B. The 2015 letter would not be effective in opting-out of the 2017 Agreement.**

The 2015 Letter would not have had the legal effect of opting Blossomgame out of the 2017 Agreement. The 2017 Agreement sets forth the specific mechanisms by which the contracting party may opt out of the Arbitration Provision, and the 2015 Letter fails to comply with those mechanisms. Blossomgame had the opportunity to opt out of the 2017 Agreement's Arbitration Provision either by "sending within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com," or by mail: "The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you." *See* Rosenthal Decl., Exhibit B § 15.3(viii).

Blossomgame did not follow these steps, and he has no legal basis for arguing that a blanket opt-out statement from 2015 would have any effect on the provisions of a subsequent agreement containing a merger clause. The Arbitration Provision of the 2017 Agreement makes clear: "The Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement." *Id.* § 15.3(ix). The 2017 Agreement also states: "This Agreement, including all Supplemental Terms, constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and supersedes all prior or contemporaneous agreements or undertakings regarding such subject matter." *Id.* § 14.5. New

York law gives full effect to merger clauses, and "[w]hen the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished."  *Roberts v. Edith Roman Holdings, Inc.*, No. 10 CIV. 4457 LAP, 2011 WL 2078223, at *3 (S.D.N.Y. May 19, 2011).  Because the 2017 Agreement, which Blossomgame accepted, supersedes all prior agreements relating to arbitration, the opt-out requirements of the 2017 Agreement control.  There is no dispute that Blossomgame did not follow the procedures to opt-out of the Arbitration Provision in the 2017 Agreement.

> **C.    The purported opt-out letter would also not have been effective under the 2015 Agreement.**

Even if the Court were to consider Blossomgame's deficient declaration in opposition, the 2015 Letter is defective on its face even under the 2015 Agreement, because it fails to meet the requirements of that opt-out provision.  The 2015 Agreement provides:

> If You do not want to be subject to this Arbitration Provision, You may opt out of this Arbitration Provision by notifying Uber in writing of Your desire to opt out of this Arbitration Provision, which writing must be dated, ***signed*** and delivered by electronic mail to optout@uber.com, by U.S. Mail, or by any nationally recognized delivery service (*e.g*, UPS, Federal Express, etc.), or by hand delivery to:
>
> > General Counsel
> > Uber Technologies, Inc.
> > 1455 Market St., Ste. 400
> > San Francisco CA 94103

Rosenthal Decl. (ECF No. 7-3), Ex. A § 15 (emphasis added).  Blossomgame's purported opt-out letter is not signed.  Further, it is addressed to the wrong location (Ste. 409 instead of Ste. 400).  Because the 2015 Letter fails to comply with the procedures set forth in the 2015 Agreement, Mr. Blossomgame is bound by the Arbitration Provision in the 2015 Agreement.

**D.     Blossomgame's declaration is contradicted by his attorney's prior representations.**

Blossomgame's unsworn declaration and the purported opt-out letter attached thereto are contradicted by his attorney's prior representations that Blossomgame did not even recall accepting either the 2015 or 2017 Agreements.  In a series of emails from October 2, 2020 through October 7, 2020, and in response to a request from Respondent's counsel, the undersigned provided counsel with proof that Blossomgame accepted the 2015 and 2017 Agreements, which contain the subject arbitration provisions.  Reply Declaration of Sean A. Malley ("Malley Reply Decl."), Exhibit A.  Blossomgame's attorney – instead of representing that Blossomgame sent a letter in 2015 opting out of the Arbitration Provision – denied that her client was even familiar with either of the two Agreements.  *Id*.

On October 2, 2020, undersigned counsel sent Blossomgame's attorney a copy of the 2017 Agreement containing the Arbitration Provision.  *See id.* at 5.  On October 6, 2020, Blossomgame's attorney responded:  "There should be some sort of log or other document showing that he actually submitted it. If this is all you have I'm not prepared to agree to dismiss the Human Rights Commission [*sic*] action."  *Id.* at 3.  Later that same day, undersigned counsel produced the electronic receipt log that Petitioner would later submit as an exhibit to the Declaration of Brad Rosenthal, showing a list with date stamps of all of the agreements that Blossomgame accepted with Uber or its affiliates.  *See id.* at 1-2.  On October 7, 2020, Blossomgame's attorney took the following position on her client's behalf:

> I spoke to my client and sent him everything you sent me, and **he is not convinced that he ever accepted the agreement**. If there is anything else you can send me, such as screenshots that illustrate what he would have clicked, I will pass it along and see if he changes his mind.

*Id.* at 1 (emphasis added).  These communications suggest, at best, that Blossomgame's factual defense evolved significantly over a matter of days.  At worst, they suggest that Blossomgame was not entirely truthful in his declaration, which notably stops short of offering testimony under penalty of perjury.

### III.    The Court May Compel Arbitration Without Enjoining the NYSDHR

The Court need not enjoin the New York State Division of Human Rights (the "NYSDHR") in order to compel arbitration, as Blossomgame suggests in his opposition. Blossomgame misstates the relief sought by Uber when he argues that "[c]ontrary to [Petitioner]'s assertion, [the NYSDHR] cannot be compelled to dismiss [Respondent]'s case based on an arbitration agreement to which it was not a party."  Opp. Br. at 4.  However, Petitioner is not asking the Court to enter any order against the NYSDHR, but rather to compel *Blossomgame* to submit any claims he might have against Uber – including those pending before an administrative law judge of the NYSHRL – to arbitration.  The Court's order should also direct Blossomgame to take the measures necessary to effectuate the dismissal of his claims in one forum, in favor of the parties' agreed-upon forum.

The Supreme Court's decision in *EEOC v. Waffle House, Inc.*, 534 U.S. 297 (2002) is inapposite because, as explained in Section II.B.3 of Uber's opening memorandum of law, the NYSDHR is scheduled to hear Blossomgame's claims against Uber in its adjudicative capacity, and is not acting on its own complaint.  In *Preston v. Ferrer*, 552 U.S. 346 (2008), the Supreme Court held that "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Id.* at 359; *see also UBS Sec. LLC v. Prowse*, No. 20CV217 (JGK), 2020 WL 433859, at *5 (S.D.N.Y. Jan. 27, 2020) (When agencies act "as adjudicators, [they] may not adjudicate claims between employers and employees when a valid arbitration agreement commits

those disputes to arbitration."). *Preston* controls here. In *EEOC v. Waffle House*, the EEOC was actually a party to the litigation, engaged in its prosecutorial function. Not so in the administrative proceeding currently before the NYSDHR. The other case cited by Blossomgame, *Hong Wang v. Precision Extrusion, Inc.*, No. 118CV350FJSDJS, 2018 WL 3130589, at *7 (N.D.N.Y. June 26, 2018), is not only inapposite, but helpful to Uber: it compelled arbitration and held that the defendant had not waived enforcement of the arbitration agreement while the matter was pending investigation before the NYSDHR. *See id.* at *7; *see also Hong Wang v. New York State Div. of Human Rights*, 177 A.D.3d 1127, 1127, 113 N.Y.S.3d 366, 367 (3d Dep't 2019) ("Following an investigation, SDHR found no probable cause to believe that unlawful discriminatory practices had occurred.").

This case is akin to *Prowse*, in which Judge Koetl in the Southern District of New York compelled arbitration of claims pending before the New York State Workers' Compensation Board in an order directed solely at the party who had brought the administrative claims – not at the Board itself. *Prowse,* 2020 WL 433859. There, as here, the administrative body need not be ordered to do anything in order for Blossomgame to abide by his contractual obligations.

## CONCLUSION

For the foregoing reasons, and those set forth in the opening memorandum of law (ECF No. 7-1), Petitioner Uber Technologies, Inc. respectfully requests that the Court grant its petition to compel arbitration of the claims asserted in Respondent Arthur Blossomgame's NYSDHR Complaint, and for a preliminary injunction enjoining Respondent Blossomgame from pursuing his NYSDHR Complaint and directing that he request dismissal of the NYSDHR Complaint and annul his election of remedies pursuant to Section 297(9) of the New York Executive Law, Article 15.

Date:   October 28, 2020
        New York, New York

/s/ Sean A. Malley
Sean A. Malley
Miguel A. Lopez
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
212.583.2691
smalley@littler.com
malopez@littler.com

*Attorneys for Petitioner*
*Uber Technologies, Inc.*