UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UBER TECHNOLOGIES, INC.,

                Petitioner,                               **REPORT AND RECOMMENDATION**
                                                                          20-CV-04842 (GRB) (JMW)

                -against-

ARTHUR BLOSSOMGAME,

                Respondent.
-------------------------------------------------------------X
**WICKS,** Magistrate Judge:

        Respondent Arthur Blossomgame ("Blossomgame")[1] was an Uber driver in the New York metropolitan area for Petitioner Uber Technologies, Inc. ("Uber"). As a result of "multiple reports of problematic behavior" concerning safety concerns, Uber deactivated his account. Blossomgame then filed, on September 16, 2019, a verified complaint with the New York State Division of Human Rights ("NYSDHR"), alleging New York State Human Rights Law, Title VII of the Civil Rights Act of 1964, and American with Disabilities Act claims stemming from his experience as an Uber driver. The parties' driver agreement, however, contains a mandatory arbitration clause as well as an arbitration opt-out provision that the driver may exercise. Before the Court at this time on referral from the Honorable Gary R. Brown is Uber's motion for summary judgment based upon the petition to compel arbitration and to enjoin the NYSDHR proceeding from moving forward. (DE 35.) Blossomgame opposes the motion, claiming he "opted out" of the mandatory arbitration provision. (DE 48.)

        For the reasons that follow, the undersigned respectfully recommends to District Judge Brown that the petition be granted in its entirety and that, accordingly, Blossomgame be compelled to pursue his claims in arbitration and enjoined from moving forward with his claims before the NYSDHR.

---

[1] As noted below, Blossomgame was initially represented by counsel but has proceeded *pro se* following their withdrawal.

I. **FACTUAL BACKGROUND**

Uber is a software company responsible for developing the "Uber Rides" digital marketplace, which matches individuals seeking transportation with independent drivers. (DE 37 at 1.) Individuals seeking transportation simply download Uber's "Rider App," which connects them to nearby drivers to provide the requested transportation services. (*Id.*) Individual riders, rather than Uber, are responsible for paying drivers for their services. (*Id.* at 2.) Blossomgame is a driver who, in 2015, began working through Uber's "Driver App." (*Id.*)

Blossomgame initially signed up for Uber's Driver App as a New York City driver on June 5, 2015. (*Id.*) Blossomgame's account became active on August 21, 2015 after he accepted a software license and online services agreement. (*Id.*) On December 11, 2015, Blossomgame accepted an updated agreement, which contained an arbitration provision. (*See id.*) The agreement specifically provided:

> If you do not want to be subject to this arbitration provision, you may opt out of this arbitration provision by notifying [Uber] in writing of your desire to opt out of this arbitration provision, which writing must be dated, signed and delivered by electronic mail to optout@uber.com, by U.S. mail, or by any nationally recognized delivery service (*e.g.*, UPS, Federal Express, etc.), or by hand delivery to:
>
> > General Counsel
> > Uber Technologies, Inc.
> > 1455 Market St., Ste. 400
> > San Francisco CA 94103

(*Id.* (capitalization altered).) Blossomgame attempted to opt-out of the 2015 agreement by letter. (*Id.*) The letter, however, was unsigned and incorrectly addressed. (*Id.* at 3; *see* DE 18 at 4.) Moreover, Uber has no record of an opt-out letter sent from Blossomgame regarding the 2015 agreement. (DE 37 at 3.)

Although he ceased using his New York City driver account sometime in 2017, Blossomgame entered into a separate contract (the "Agreement") with a subsidiary of Uber on September 16, 2017 to match with riders outside of the New York City area in Nassau County, New York. (*Id.*) That Agreement contains an arbitration provision, which makes clear that it is "the full and complete agreement relating to the formal resolution of disputes arising" thereof. (*Id.* at 4.) The provision covers *all* disputes between Uber and Blossomgame, such as "disputes arising out of or related to

[Blossomgame's] relationship with the Company or Uber, including the formation or termination of the relationship," and "claims arising under the . . . Civil Rights Act of 1964, American with Disabilities Act, . . . Fair Labor Standards Act, . . . and state statutes, if any, addressing the same or similar subject matters." (*Id.* at 4–5.)  The parties agreed that the Federal Arbitration Act ("FAA") governs the arbitration provision, that any disputes "arising out of or relating to interpretation, application, enforceability, revocability or validity of [the arbitration provision] shall be decided by an [arbitrator] and not by a court or judge, and that the arbitration provision survives even after the Agreement terminates. (*Id.* at 5.)

Like the 2015 agreement, this Agreement contained an arbitration provision that Blossomgame could opt-out of:

> If you do not want to be subject to this arbitration provision, you may opt out of this arbitration provision by notifying [Uber] in writing of your desire to opt out of this arbitration provision, either by (1) sending within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the arbitration provision or (2) by sending a letter by U.S. mail, or by any nationally recognized delivery service (*e.g*, UPS, Federal Express, etc.), or by hand delivery to:
>
> > Legal
> > Raiser, LLC
> > 1455 Market St., Ste. 400
> > San Francisco CA 94103

(DE 1-1 at 22 (capitalization altered).[2])  Blossomgame agreed to be bound to the terms of the arbitration provision in the event that he failed to opt-out in the manner described above.  (DE 37 at 5.)  Although Blossomgame attempted to opt-out of the arbitration provision by delivering a letter in 2017 to the Uber office in Queens, New York (DE 53), Uber does not have any record of an opt-out letter from Blossomgame relating to the 2017 Agreement (DE 37 at 5).

On February 25, 2019, Uber deactivated Blossomgame's account due to safety concerns based on "multiple reports of problematic behavior." (*Id.* at 6.)  Blossomgame then filed, on September 16, 2019, a

---

[2] Despite citations thereto, Uber appears to have neglected to attach any exhibits to Mr. Rosenthal's Declaration. (*See* DE 42.)  The Court has nonetheless considered the Agreement, as Uber appended it to the case-initiating petition. (DE 1-1; *see Ayazi v. United Fed'n of Tchrs. Loc. 2*, 487 F. App'x 680, 681 (2d Cir. 2012) ("[W]hen assessing a summary judgment motion, a District Court may consider other materials in this record.").)

3

verified complaint with the NYSDHR, alleging New York State Human Rights Law, Title VII of the Civil Rights Act of 1964, and American with Disabilities Act claims stemming from his experience as an Uber driver. (*Id.*) Uber asked Blossomgame, pursuant to the 2017 Agreement, to withdraw his NYSDHR complaint and submit his claims to arbitration. (*Id.*) Blossomgame refused, forming the basis for this lawsuit.

## II. PROCEDURAL HISTORY

Uber commenced this action by filing its petition to compel arbitration on October 8, 2020. (DE 1.) The next day, Uber moved for an order to show cause, seeking a temporary restraining order and a preliminary injunction barring Blossomgame from pursuing his claims before the NYSDHR. (DE 7.) On January 1, 2021, Blossomgame—who, at that point, was represented by counsel— and Uber appeared before the Hon. Sandra J. Feuerstein for a conference regarding Uber's request for a temporary restraining order and preliminary injunction. (DE 22.) At the conference, Judge Feuerstein granted Uber's request for preliminary injunctive relief, preventing Blossomgame from moving forward with his claims before the NYSDHR. (*Id.*; *see* DE 23.)

The parties then engaged in "limited expedited discovery regarding the issue of arbitrability, including whether Blossomgame properly opted out of the arbitration provisions in the Agreements." (DE 23.) Blossomgame's counsel soon thereafter withdrew from the matter, prompting Blossomgame to proceed *pro se*. (*See* DE 25, 28.)

Having completed expedited discovery, Uber now moves for summary judgment on its petition to compel arbitration and claim for permanent injunctive relief preventing Blossomgame from moving forward in the NYSDHR proceeding. (DE 35.) Blossomgame opposes that motion in its entirety. (DE 48.) On August 5, 2021, Judge Brown referred Uber's motion to the undersigned for a Report and Recommendation. (Electronic Order dated Aug. 5, 2021.) On October 28, 2021, the Court heard oral argument from the parties and reserved its decision for the present Report and Recommendation. (DE 53.)

### III. DISCUSSION

#### A. The Summary Judgment Standard

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett*¸ 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the nonmovant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*¸ 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the nonmovant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the nonmovant must still do more than merely assert conclusions that are unsupported by arguments or fact, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and emphasis omitted). This principle applies when considering motions for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.") (citation omitted). Nonetheless, the "application of this different standard does not relieve [the *pro se* party] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003).

### B. Blossomgame's Claims are Subject to Arbitration

The FAA declares that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly described the FAA as the embodiment of a federal policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (collecting cases). Indeed, Congress enacted the FAA to "overcome judicial resistance to arbitration" and "place[] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA governs the terms of the Agreement at issue here. (DE 37 at 5.)

"Questions of arbitrability are generally reserved for judicial determination, including 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)). Such questions are colloquially referred to as "gateway issues." *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Given that "arbitration is a matter of contract," *id.* at 69, "[w]hen the parties empower the arbitration to decide 'arbitrability,'" *i.e.*, gateway issues, "the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause," *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) (Spatt, J.) (citing *Rent-A-Center, W.*, 561 U.S. at 71–72.) The issue of arbitrability may be delegated to an arbitrator only when "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (internal quotation marks omitted); *see Mumin*, 239 F. Supp. 3d at 521; *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52 (E.D.N.Y. 2017).

Here, the Agreement's delegation clause unmistakably delegates the gateway arbitrability issues to the arbitrator. Specifically, the delegation clause provides that "disputes arising out of or relating to interpretation, application, enforceability[,] or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (DE 37 at 5.) This language unequivocally demonstrates the parties' intent to submit the gateway issues of arbitrability to the arbitrator. The decision in *Mumin v. Uber Technologies, Inc.* is directly on-point and dictates the result here. In *Mumin*, the Hon. Nicholas G. Garaufis found that the arbitration provision at issue—which was nearly identical to the language included in the Agreement here—clearly evinced the parties' intent to submit arbitration clause interpretation issues to the arbitrator. 239 F. Supp. 3d at 522–23 ("The Arbitration Provision specifically states that 'disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge.' This language clearly and unmistakably evinces the parties' intent to submit to an arbitrator any disputes relating to the interpretation or application of the arbitral clause.") (internal citation omitted). This Court sees no reason to stray from *Mumin* or conclude that a contrary outcome is warranted here.

Construing his arguments as liberally as possible, Blossomgame contends that the Agreement's arbitration provision is inapplicable because he opted out of the arbitration provision by letter—once prospectively in 2015, and again in 2017. (DE 48 at 2.) To reiterate, Uber and Blossomgame entered into the Agreement at issue on September 16, 2017. (DE 37 at 3.) Thus, as to his 2015 letter, even assuming that letter conformed to the requirements of the Agreement's opt-out provision, Blossomgame could not prospectively opt-out of a contractual provision that did not exist until nearly two years later. *See Lee v. Uber Techs.*, 208 F. Supp. 3d 886, 893 (N.D. Ill. 2016) ("At the time [plaintiffs] attempted to opt out, however, the plaintiffs had not yet accepted the . . . version of the agreement [at issue]; thus, no contract had yet been formed from which they could opt out."). Blossomgame's 2015 letter therefore has no bearing on the enforceability of the arbitration provision here.

7

Blossomgame's argument that his 2017 letter places him outside of the purview of the arbitration provision likewise holds no water, albeit for a different reason. At first blush, Blossomgame's 2017 letter appears to adhere to the Agreement's opt-out requirement—it is dated October 2, 2017, within the allotted thirty-day opt-out window; it is signed by Blossomgame; and it is made out to the appropriate address.[3] (*Compare* DE 48 at 16 (Blossomgame's 2017 letter) *with* DE 1-1 at 22 (Agreement opt-out provision).) However, at oral argument on October 28, 2021, Blossomgame made clear that he never mailed this letter to the stated inside address; rather, Blossomgame dropped the letter off at an Uber office in Queens, New York. (*See* DE 53.) By failing to mail the letter to the appropriate address—as required by the terms of the Agreement—Blossomgame did not successfully opt-out of the Agreement and is therefore bound by its arbitration provision.

Accordingly, the undersigned respectfully recommends that Uber's motion for summary judgment on its petition to compel arbitration be granted.

C. Uber is Entitled to a Permanent Injunction

Uber has additionally moved for summary judgment on its claim for permanent injunctive relief to prevent Blossomgame from pursuing his claims before the NYSDHR. A party seeking a permanent injunction must satisfy a four-part test, establishing "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Griggs v. Weiner*, 13 CV 3885 (KAM) (CLP), 2021 WL 4268095, at *14 (E.D.N.Y. Aug. 10, 2021) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). This standard is akin to the standard for a preliminary injunction, except that the moving party must establish actual—as opposed to likely—success on the merits of its claim. *United States v. Buddhu*, No. 3:08–cv–0074 (CFD), 2009 WL 1346607, at *5 (D. Conn. May 12, 2009) (citing *Amoco Prod. Co. v. Vill. of Gamble, Alaska*, 480 U.S. 531, 546 n.12

---

[3] Despite including the correct address, the letter is technically deficient under the terms of the Agreement, given that it is made out to "Uber General Counsel" rather than "Legal, Raiser LLC."

8

(1987)). With these considerations in mind, the Court evaluates each of the above-referenced prongs and finds that Uber is entitled to permanent injunctive relief.

Uber has established that it will suffer irreparable harm absent injunctive relief and that legal remedies are inadequate to redress Uber. "In order to demonstrate irreparable harm, a plaintiff must show an injury that is 'actual and imminent' and that 'cannot be remedied by an award of monetary damages.'" *Reckitt Benckiser Inc. v. Motomco, Ltd.*, 760 F. Supp. 2d 446, 453 (S.D.N.Y. 2011) (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)). Courts have repeatedly held that losing the ability to enforce an arbitration agreement constitutes irreparable harm. *See Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, 16-cv-5699 (JGK), 2016 WL 4204066, at *4 (S.D.N.Y. Aug. 4 2016); *UBS Secs. LLC v. Prowse*, 20cv217 (JGK), 2020 WL 433859, at *7 (S.D.N.Y. Jan. 27, 2020); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017).

Here, Uber's loss of its bargained-for right to arbitrate is actual, imminent, and would constitute harm that could not be remedied with monetary damages. Indeed, were Blossomgame permitted to move forward in the NYSDHR proceeding, both parties would face the preclusive effects of the NYSDHR outcome on any subsequent arbitration, state court, or federal court proceeding. *See Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178–83 (E.D.N.Y. 2006) (holding that plaintiff's claims were barred by *res judicata* and collateral estoppel based on a NYSDHR proceeding disposition). Said differently, allowing the NYSDHR proceeding to run its course would rid Uber of its bargained-for right to arbitrate. As such, Uber has established that it will suffer irreparable harm absent permanent injunctive relief. Relatedly, the remedies available at law—*i.e.*, monetary damages—are inadequate to compensate Uber for Blossomgame's reluctance to submit to arbitration as required by the arbitration agreement. Uber has satisfied the first and second prongs required to obtain a permanent injunction.

Moreover, the balance of the hardships weighs in favor of Uber. "'[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the [permanent] injunction motion were wrongly decided.'" *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435,

9

444 (S.D.N.Y. 2013); *see Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 20-CV-2165 (MKB), 2021 WL 3565739, at *12 (E.D.N.Y. Aug. 12, 2021) ("Under the third prong, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.") (internal quotation marks and citation omitted). On balance, the Court concludes that Uber, not Blossomgame, would suffer most in the event the permanent injunction motion was wrongly decided. As discussed above, Uber, in the event of an adverse ruling, would forever lose its bargained-for rights to arbitrate any claims Blossomgame may assert against it. Conversely, Blossomgame would lose little should he be enjoined from moving forward with the NYSDHR proceeding—indeed, Blossomgame could still bring any claim he may have against Uber, albeit by way of arbitration as agreed upon in the parties' contract. Thus, the balance of the hardships decidedly favors Uber under these circumstances.

Finally, the public would not be disserved if a permanent injunction were issued in this case. "In analyzing the public interest prong, a court must consider 'the public consequences in employing the extraordinary remedy of injunction' and ensure that the proposed injunction will not harm the public interest." *Relief Med., P.C.*, 2021 WL 3565739, at *13. "In general, public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreement." *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). Given the strong federal policy in favor of arbitration, enforcing—through injunctive relief—arbitration clauses that parties voluntarily enter serves, rather than harms, the public interest. *See WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 406 (S.D.N.Y. 2018). Thus, enjoining Blossomgame from moving forward in the NYSDHR, effectively requiring him to adhere to the Agreement's arbitration clause, serves the public interest and satisfies the last branch of the permanent injunction analysis.

In sum, Uber has established that a permanent injunction preventing Blossomgame from pursuing his claims against Uber before the NYSDHR is warranted. The undersigned therefore respectfully recommends that Uber's motion for a permanent injunction be granted.

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Uber's motion for summary judgment be granted in its entirety.

## V. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Uber. Uber's counsel shall serve a copy of this Report and Recommendation on *pro se* Blossomgame and file proof of same on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
October 29, 2021

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge